We'll hear the next case, Ahmed v. Cissna. Good afternoon, Your Honors. Julie Goldberg for the appellate. Sorry. So before I begin, I want to point out that USCIS, just four days ago, completely changed the policy which we are here discussing and which the judge made her decision on. In doing so, they resolved the staffing issues because this policy delegates and gives blanket authority to DOS to accept I-130 petitions without approval from USCIS. Therefore, if it pleases the court, I'd like to focus on claims relating to the refusal to follow established procedures to accept the direct I-130 and the mandated policy that all Yemeni petitioners are required to attest. Why didn't your clients simply try the other way and see whether they would be given permission not to travel or not? I don't understand. Are you trying to fight a cause or a case of your clients? Because your clients haven't tried to do what in some cases worked and in some cases didn't, but because it was different, they didn't send a DNA. So I don't understand what's going on here. I think that the answer to that question is twofold. Number one, I think that it is a futile action for them to file in the U.S. and I think the confusion stems from several issues that the district court did not have correct. For example, and this goes to this point, Your Honor, under the Yemeni adjudication scheme, it's flat out. An interview is required. In fact, if you go to Appendix A56, first paragraph, sub one, the last sentence on Policy 602-0064 specifically says, without credible DNA, the petition cannot be approved without an interview. It's not speculative. It's not contingent. And reliance on the Nicholas Declaration that said, oh, on a case-by-case basis, we can waive this interview, is just not factually correct. The other issue that we presented evidence of is in that same policy. It says, if you present credible evidence of DNA, we may, not we will, we may waive the interview. But that isn't the policy of USCIS. It's never been the policy for Yemeni petitioners. In fact, I've done over... How do we know? Present credible DNA and see if they do that. You're asking us to make all sorts of decisions and get into questions of political issue, question of this and that. Now, if the APA or some statute required this, that would be a different matter. And that's something that is worth arguing. But on the issue of whether we should take this up, when you are saying they may and therefore will not, I just don't get it. So I'd like to address that. I submitted a declaration. I have an office overseas. I personally adjudicated over 8,000 of these, handled these cases in my office. I have yet, and that is my declaration, and we submitted evidence. When there is DNA, they do still require an interview. In fact, we submitted to the court in the appendix attached to my declaration... ...that we should hold the government misbehaving in this case. I mean, you know... The policy of USCIS is that, and it's clear, the policy is very clear. The policy says if you don't have credible DNA, and you can't take DNA from a husband to a wife, which is some of our petitions in this case, how are you going to get credible DNA to prove a husband and wife relationship? So in this particular case, they specifically say, no DNA, you have an interview. Now, for the government to submit a self-serving declaration that violates their own published policy, it wasn't okay for the court to rely on that particular point. Not to mention, while the policy says they may not schedule an interview, that is not the practice and policy of USCIS. Every Yemeni client who has, in fact, once this was denied, our clients did file I-130s, and they did avow themselves of the end process. Several of those petitions are pending with DNA, and those were filed just prior to the decision and just after, because they couldn't wait any longer, given the extreme circumstances. Those petitions are still pending. A lot of them were credible DNA was submitted at 99.9%, and that DNA was submitted back in 2018. We are now sitting here in February of 2020, and those petitions still haven't been approved. And along with my declaration, we submitted examples specifically showing that in cases of DNA where the petitioner did not show up to the interview, the case was denied, and that evidence was submitted in the record to the court. And at a minimum, under 12b-1, if you're going to collect all the outside evidence, and it contradicts, I mean, you've got the government declaration saying, no, you don't need an interview on case-by-case. You've got the public policy, and you have our evidence. At a minimum, you need to hold an evidentiary hearing to get to the bottom of what is factually accurate. Does that answer that question? Second of all, what I want to turn to is, you said it's not in the law, but I'd like to walk the court through this procedure. So, the INA and the CFRs via USCIS does establish a process for applying for these emergency procedures. And to the extent that they want to deny it, they have to produce a reasonable explanation, and they didn't in this case. And if you go to 8 CFR 2041, the code says you must file the form and instructions to the Attorney General by which they prescribe. This is not discretion. Then, if you go to 103.2, the form's instructions are hereby incorporated into the regulations requiring its submission. So, the instruction that USCIS produced is now incorporated into the regulations. And here's what they put in their instructions. Instructions. Where to file. Please see our website at www.uscis.gov. When you click on that link, it says, websites where to file. If you reside outside the United States, you may request to file at the U.S. Embassy or Consulate in certain limited circumstances as prescribed in the USCIS policy. If you are a U.S. citizen and you are filing your form for your immediate relative, spouse, unmarried child under 21, or parents. And then it goes on to say, for a list of embassies and consulates, please consult the Department of State. So, 103.2 does incorporate this policy. And if we look at the appendix at page 68, and we read what the policy said, and this is another area where I believe the district court misinterpreted the policy, because she said that this is discretionary. But that is not what the policy said. The policy says, if you find someone in your council district who meets these examples, you should, not may, not can, you should. Which borders on mandatory. You should refer them, and it will likely be approved. So there's no discretion in that decision. Thank you. We'll hear from the government.  May it please the court. My name is Li Yu. I'm an assistant U.S. attorney from the Southern District of New York. And I represent the appellees. Your Honor, the district court's decision should be affirmed because Judge Filo carefully construed plaintiff's claims and correctly decided under Rule 12b-1 and Rule 12b-6. If I may, just for a moment, because Judge Calabresi's question raised the issue of whether or not there is inconsistency or consistency. Perhaps lift up the microphone a bit. Thank you. Yes, Your Honor. Just to respond to Your Honor's question about the DNA testing procedure. In fact, if the court were to look at the U.S. CIS policy memorandum and compare it with Ms. Nicholson's declaration, those are entirely consistent, which is the policy memorandum requires both a credible DNA test but also says that even if there is a credible DNA test, there may still be circumstances when there is adverse or derogatory information in the file. Then, you know, even with DNA evidence, there may still be a need for interview. And so because the policy itself provides for exceptions, so the fact that plaintiffs can cite exceptions doesn't in any way invalidate the fact that the policy exists. If anything, it simply shows that the policy provides for exceptions and exceptions sometimes are made. So the record is clear. I submit that there is no inconsistency between… He has made the argument that this is all very well, but that the practice is so ingrained that no one from Yemen gets without an interview in the United States that we should read it despite the fact that it might be to be an absolute inverse of futile. What's your answer to that? Your Honor, so I think on the futility point, you know, I think the record shows, you know, that in this case, and I think the court can credit the government's assertion in this respect because it's under the presumption of good faith that the government routinely… There have been… I'm sorry, the I-130 applications from Yemeni applicants with supported by DNA evidence are routinely approved. It doesn't say they are inevitably approved, but there are, you know, so I think it counters this suggestion that the entire procedure… You say that the record shows that this is not an inevitable practice of declining, that there are some instances where this is granted. Yes, Your Honor, and that goes to the question of… that's the question the court started with, which is the ripeness question. Yeah. And with regard to the legal authority, whether or not there is any statutory or regulatory obligation on the part of the consular officers or USCIS to grant locally processed applications, Judge Feiler, again, was correct. She engaged in a careful analysis of legal authority and correctly concluded that plaintiffs have not pointed to anything that compels or imposes a mandatory duty. If the court has no further questions, we rest our brief. All right, thank you. So I would point out to the court that with the exception of the Nicholson Declaration, there is not a single shred of evidence that this is not the policy in practice. They didn't present one case. They didn't present one scenario. On the contrary, we presented three or four different examples of denials where the petitioner had a DNA and the case was still denied for refusal to attend the interview. So my point is, if you're going to look to outside evidence... The government may have felt that the DNA test was not reliable. Well, it's 99%. And what we are using that to show, and maybe... I don't mean 99% reliability of DNA. I mean that the test was performed on somebody else, for example. So these tests are only allowed from accepted accredited agencies. The petitioner and beneficiary have to go in to collected sites. So, for example, the beneficiary in Djibouti must go into the embassy. They're monitored by the U.S. government. So, you know, and maybe that's something that should have come out at an evidentiary hearing to clarify these factual disputes. But the point is, is even without the DNA, if there's no DNA, which you can't have in a husband and wife case, then they are mandated to have an interview. The other... If one of them has to go to appear in person, surely the other one can stay behind with the children. I understood that that's your problem. Yeah, so in... If you have two people or two parents... And the issue... The children don't have to be left alone. Agreed. And the issue was more with the single mom who did, in fact... Because subsequent to this decision, like I said, we can't leave people in a war zone, we did file I-130s, and her DNA was submitted, and there still has not been a ruling on that. To that point, I would just like to... One of the issues that I have with the Yemeni adjudication program and the requirement of coming to the U.S. is that this court declined to accept the Western District, but many other circuits have decided that there is a property interest in filing for the I-130. And I think that that gives this higher scrutiny in that the government needs to follow the procedures that are set out, and I also think it prevents the government from setting and established procedures that prevent U.S. citizens from applying for this property right. And the fact that, you know, they say, listen, there's an international office, but that's twofold. First of all, the international office is in Italy, and they can no more get the Yemeni passports into Italy than they can the U.S. Second of all, under this new policy, they've closed every single USCIS office. So there is no international office in which a Yemeni national or U.S. citizen can go to hold one of these interviews. And so I think at a minimum, we stated a claim under 12b-6 because of the fact that there is a property right in applying for this I-130, and the government has put regulation in place which prevents some of the U.S. citizens from applying for this. For example, a mother whose husband has been murdered and she's got three small children in a foreign country. Thank you. Well-reserved decision.